NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DANIEL TODD SLINGER, *et al.*, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 07-CV-5561 (DMC) |
| | : | |
| STATE OF NEW JERSEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants State of New Jersey ("State") and County of Morris ("Morris County") and motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) by Defendants Morris County Prosecutor's Office ("MCPO"), Morris County Prosecutor Michael Rubinaccio ("Rubinaccio"), Chief of Detectives Joseph Devine ("Devine") and Sargent Michael Rogers ("Rogers," and collectively, with Rubinaccio and Devine "Prosecutor Defendants," and collectively, "Defendants"). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motions to dismiss are **granted**.

I.    **BACKGROUND**[1]

Plaintiffs Daniel Slinger ("Daniel"), Joanne Slinger ("Joanne") and Gregory Slinger ("Gregory," and collectively, "Plaintiffs") have brought claims under 42 U.S.C. § 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 and state tort law.

On November 19, 2007, Plaintiffs filed the Complaint, in which they allege that during a criminal investigation, the Prosecutor Defendants misidentified Daniel as a participant in a criminal activity.  Based upon the misinformation, a warrant, signed by a judge in the Superior Court of New Jersey on November 18, 2005, was issued for Daniel's arrest.

Plaintiffs allege that, on November 19, 2005, between the hours of 6:00 a.m. and 7:30 a.m., law enforcement personnel unlawfully entered their home and wrongfully arrested Daniel. Following Daniel's arrest, Daniel was transported to the Morris County Correctional Facility. Daniel was detained and released later the same day after his mother posted bail. Daniel's criminal matter was later administratively dismissed on December 14, 2005.

Specifically, in Count One of the Complaint, Plaintiffs claim Defendants negligently arrested and imprisoned Daniel. In Count Two, Plaintiffs allege Defendants are liable for negligently entering Plaintiffs' residence without a valid warrant. Plaintiffs allege in Count Three that Defendants falsely arrested and imprisoned Daniel in violation of his rights pursuant to N.J.S.A. § 10:6-2. In Count Four, Plaintiffs claim that law enforcement personnel caused a wrongful and warrantless entry into their home in violation of N.J.S.A. 10:6-2 and 42 U.S.C. § 1983. In Count Five, Plaintiffs allege a cause of action under 42 U.S.C. § 1983, for Daniel's false arrest and false imprisonment.

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

In Count Six, Plaintiffs allege that Defendants had a duty to exercise reasonable care in training and supervising Morris County assistant prosecutors and Morris County law enforcement officers and in promulgating official policies, customs and practices concerning the training and supervision of these assistant prosecutors and law enforcement officers. Finally, in Counts Seven and Eight, Plaintiffs allege Defendants negligently, recklessly or with deliberate indifference, trained, supervised and promulgated official policies, customs and practices that led to the unconstitutional law enforcement activity. Plaintiffs allege a violation of N.J.S.A. § 10:6-2 in Count Seven and a violation of 42 U.S.C. § 1983 in Count Eight.

Defendants move to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II.  STANDARDS OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1)

Upon a Fed. R. Civ. P. 12(b)(1) motion, addressing the existence of subject matter jurisdiction over a plaintiff's complaint, "no presumptive truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J.1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction.'" Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v.

U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)).  "Where an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited."  Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6).

      B.      Fed. R. Civ. P. 12(b)(6)

      In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Fed. R. Civ. P. 12(b)(6) standard.  See 127 S. Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  Twombly, 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46).  Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1965.

### III.   DISCUSSION

_____Plaintiffs' claims against the State are dismissed *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiffs' claims against the MCPO and Prosecutor Defendants are likewise dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiffs' claims against Morris County are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

  A. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

 The suit is barred by the Eleventh Amendment to the Constitution of the United States. Therefore, the Court lacks subject matter jurisdiction to preside over the case and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (stating that "Eleventh Amendment is a jurisdiction bar which deprives federal courts of subject matter jurisdiction.").  The United States Court of Appeals for the Third Circuit has held that an Eleventh Amendment defense is properly addressed in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), rather than Fed. R. Civ. P. 12(b)(6), "caution[ing] against treating a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and reaching the merits of the claims" because "the standard for surviving a Rule 12(b)(1) motion is lower than that for a 12(b)(6) motion."  Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (citing Kehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1409 (3d Cir. 1991)).

 When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a district court must distinguish between facial and factual challenges to its subject matter jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings."

Smolow v. Hafer, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) (citing Mortensen, 549 F.2d at 891).

In the current case, defendants assert that the Court lacks jurisdiction to hear the case because the

suit is barred by the Eleventh Amendment.  Accordingly, a factual analysis is unnecessary

because a jurisdictional argument is a facial attack.  In addressing a facial attack to jurisdiction,

the court should "consider the allegations of the complaint and documents referenced therein and

attached thereto, in the light most favorable to the plaintiff."  Gould, 220 F.3d at 176.

Accordingly, because the Court lacks jurisdiction to hear this matter, the Complaint is dismissed.

      B.    State of New Jersey

      1.    Plaintiffs' Claims Against State are Barred by the Eleventh Amendment

Plaintiffs' claims against the State are dismissed because they are barred by the

Eleventh Amendment. State agencies and officials acting in their official capacity cannot be sued

under the principles of sovereign immunity and the Eleventh Amendment. See Will v. Michigan

Dep't of State Police, 491 U.S. 58, 70-71 (1989). The Eleventh Amendment makes explicit

reference to the states' immunity from suits: "The Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." See

U.S. Const. amend. XI.   "Eleventh Amendment immunity" is:

> something of a misnomer, for the sovereign immunity of the States neither derives
> from nor is limited by the terms of the Eleventh Amendment. Rather, as the
> Constitution's structure, and its history, and the authoritative interpretations by [the
> Supreme Court] make clear, the States' immunity from suit is a fundamental aspect
> of the sovereignty which the States enjoyed before the ratification of the Constitution,
> and which they retain today . . . except as altered by the plan of the Convention or
> certain constitutional Amendments.

Alden v. Maine, 527 U.S. 706, 712-13 (1999).

Sovereign immunity is not merely a defense to liability; it is an immunity from suit. See Fed. Mar. Comm'n v. S.C. State Port Auth., 535 U.S. 743, 766 (2002). The preeminent purpose of this doctrine is "to accord States the dignity that is consistent with their status as sovereign entities." See id. at 760. Sovereign immunity provides states the freedom to govern in accordance with the will of its citizens. See id. at 765. This immunity stands for the principle that states should not even be brought into federal court to answer a Complaint by a private person. See id. at 760.

Regardless of whether a suit seeks monetary damages or injunctive relief, a suit against a state or its officials is barred in federal court if the decree would operate against the sovereign. See Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (citing Hawaii v. Gordon, 373 U.S. 57, 58 (1963) (per curiam)).  Sovereign immunity applies regardless of whether a suit is for monetary damages or some other relief. See Fed. Mar. Comm'n, 535 U.S. at 765.  The type of relief sought by a private citizen is "irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." Id. (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996)). Noting the general rule, in Pennhurst, the Supreme Court of the United States reaffirmed its previous determination that a suit is against the state if the judgment would be paid out of the state treasury or would interfere with government administration. See 465 U.S. at 101 n.11 (citing Dugan v. Rank, 372 U.S. 609, 620 (1963)). Likewise, if the judgment operates to compel the state to act or to restrain it from acting, the suit is against the sovereign. See id.

The sovereign immunity afforded states by the Eleventh Amendment precludes suits against the state in federal court.   See, e.g., Lassoff v. N.J., 414 F. Supp. 2d 483, 488 (D.N.J. 2006); Kelley v. Edison Twp., 377 F. Supp. 2d 478, 482 (D.N.J. 2005); Bennett v. Atlantic City,

288 F. Supp. 2d 675, 679 (2003); Rudolph v. Adamar of N.J., 153 F. Supp. 2d 528, 534 (D.N.J.

2001); Jordan v. New Jersey Dep't of Corrs., 881 F. Supp. 947, 951 (D.N.J. 1995).

There are three limited exceptions to state sovereign immunity. None, however, apply to

Plaintiffs' claims against the State. See Kelley, 377 F. Supp. 2d at 483.  Under the first

exception, Congress may abrogate a state's Eleventh Amendment immunity for rights protected

under the Fourteenth Amendment. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ.

Expense Bd., 527 U.S. 666, 670 (1999). The abrogation, however, must be "an unequivocal

expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the

several States.'" Pennhurst, 465 U.S. at 99 (quoting Quern v. Jordan, 440 U.S. 332, 342 (1979)).

The Supreme Court specifically held that Congress has not abrogated the immunity for actions

under the Civil Rights Act of 1871, of which 42 U.S.C. § 1983 is a part. See Quern, 440 U.S. at

340 (citing Alabama v. Pugh, 438 U.S. 781, 782 (1978)).  Accordingly, 42 U.S.C. § 1983 does

not override a state's Eleventh Amendment immunity. See Bennett, 288 F. Supp. at 683 (citing

Quern, 440 U.S. at 342).

The second exception to the doctrine of Eleventh Amendment immunity is state consent

to a suit. See Blatchford v. Native Vill. of Noatak & Circle Vill., 501 U.S. 775, 779 (1991).

Consent only exists when a state "makes a 'clear declaration' that it intends to submit itself" to a

Court's jurisdiction. See Coll. Sav. Bank, 527 U.S. at 675-76 (quoting Great N. Life Ins. v. Read,

322 U.S. 47, 54 (1944). Anything less than an unequivocal waiver of immunity will not subject a

state to suit. See Pennhurst, 465 U.S. at 99. The State of New Jersey has never waived its

sovereign immunity in the federal courts. The Tort Claims Act, N.J.S.A. 59:1-1 *et seq*., re-

established the doctrine of sovereign immunity for the State of New Jersey because it declared

that immunity exists for the State for all actions unless specifically provided for under the Act.

Even when a state statute expressly consents to a suit in the state's own courts, consent to a similar suit in federal court will not be inferred, unless the statutory language is clear that the state intended to waive Eleventh Amendment immunity. See Skehan v. Bd. of Trustees of Bloomsburg State Coll., 590 F.2d 470, 487 (3d Cir. 1978). Indeed, it has been determined that the State has not, by enacting the Act, waived its Eleventh Amendment immunity. See Bennett, 288 F. Supp. 2d at 683 (citing Rudolph v. Adamar of N.J., Inc., 153 F. Supp. 2d 528, 540-44 (D.N.J. 2001).

A third exception allows suits against state officials in their official capacities where Plaintiff seeks prospective, injunctive relief for ongoing violations of federal law.  See Ex parte Young, 209 U.S. 123, 159-60 (1908).  The Plaintiffs, however, do not allege ongoing violations of federal law nor do they seek prospective injunctive relief.  Rather, Plaintiffs seek monetary damages for alleged past violations.  Accordingly, this exception does not apply.  Therefore, the Eleventh Amendment bars Plaintiffs' claims and their Complaint is dismissed as to the State of New Jersey.

### 3.     New Jersey Civil Rights Act

In interpreting a statute, a court's goal is to divine the intent of the legislature. See DiProspero v. Penn, 874 A.2d 1039, 1048 (2005). The court should "ascribe to the statutory words their ordinary meaning and significance" when read "in context with related provisions so as to give sense to the legislation as a whole." Id. (internal citations omitted).  In construing a statute, the court must "attempt to capture the essence of the law – its logic, sense, and spirit –  to achieve a result contemplated by the Legislature." State v. Crawley, 901 A.2d 924, 931 (2006)

(citing Aponte-Correa v. Allstate Ins. Co., 744 A.2d 175, 177-78 (2000)).

The Act was intended to serve as an analog to 42 U.S.C. § 1983; it was designed to "incorporate and integrate seamlessly" with existing civil rights jurisprudence. Moreover, the NJCRA did not override existing statutes of limitations, waive immunities, or alter jurisdictional or procedural rules "that are otherwise applicable to the assertion of constitutional or statutory rights." Id. Given this legislative history, the court will apply existing § 1983 civil rights jurisprudence to the NJCRA. Additionally, New Jersey has its own system of immunities, codified by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*, that were not abrogated by the NJCRA.

The NJCRA, was modeled after the federal civil rights act, 42 U.S.C. § 1983, to provide a state remedy for civil rights violations.  N.J.S.A. 10:6-2(c) states, in pertinent part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges, or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges, or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion *by a person* acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c) (emphasis added).

Sovereign immunity flows from the fundamental aspects of sovereignty enjoyed by the states before the Constitution was ratified. See Alden v. Maine, 527 U.S. 706 (1999). That immunity was retained by the states as "residuary and inviolable sovereignty" following ratification of the Constitution. See id. at 715. Upon entering the Union, the several States surrendered a part of their sovereignty to the federal government, but not to individual citizens.

10

See Blatchford, 501 U.S. at 779.  Not even Congress can pierce the state's sovereign immunity against being hauled into its own courts by a citizen, except in special circumstances, none of which is applicable here. See Alden, 527 U.S. at 732-33; Seminole Tribe of Fla. v. Florida, 517 U.S. 44 (1996).

Under the common law, not even local governmental entities were liable for punitive damages and other penalties, see, e.g., Newport v. Fact Concerts, 453 U.S. 247, 259-261 (1981), and the sovereign state was itself absolutely immune from any liability. See Allen v. Fauver, 167 N.J. 69, 74 (2001). As a matter of New Jersey law, the common law principle of absolute sovereign immunity has in recent years "eroded," id., but the principle remains; statutes that abrogate the state's sovereign immunity and *a fortiori*, statutes that would impose a monetary penalty upon the state, are subject to "strict construction" and "are not permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the Legislature to effect such object is clearly expressed in the statute." Id. (quoting N.J. Interstate Bridge & Tunnel Comm'n v. Jersey City, 118 A. 264, 265-66 (Ch. 1922) (emphasis added).

The intent to intrude upon the state's fiscal independence and "divest the state" of funds in the state's treasury, whether for compensation to victims or for NJCRA penalties, is not clearly expressed in the NJCRA. New Jersey has waived its immunity from tort liability only in specified circumstances under the Tort Claims Act. Public entities are immune from tort liability, except under the provisions of the Act. See Schwarz v. Port Auth. Transit Corp., 702 A.2d 1351, 1357 (App. Div. 1997).

 The plain language of the statute itself also indicates that the state is immune from liability. A defendant, to be liable within the meaning of the statute, must be a "person." N.J.S.A.

11

10:6-2(c).The use of the word "person" manifests legislative intent to retain sovereign immunity for two reasons.

First, the requirement that the party sued be a "person" is the same under both the NJCRA and Section 1983. The Supreme Court held in Will that a state or an official of the state while acting in his or her official capacity is not a "person" within the meaning of 42 U.S.C. § 1983. See 491 U.S. at 71.  A suit against a state official in his official capacity is not a suit against the official, but is a suit against the official's office and, therefore, "it is no different from a suit against the [s]tate itself." Id. at 89 (internal citations omitted). Essentially, an official capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985). The Supreme Court held that in employing the noun "person" as the defendant against whom the action must be brought, Congress did not intend that § 1983 provide an action against states. See Will, 491 U.S. at 69. Since the NJCRA is substantially modeled after 42 U.S.C. § 1983, and shares the requirement that the defendant sued be a "person," the NJCRA should also be deemed to incorporate Will.

 Second, the term "person," as used in New Jersey statutes, has a precise definition in New Jersey law; that definition, as applied to the NJCRA, does not include the state. The term "person," as used in legislative enactments and defined in N.J.S.A. 1:1-2, includes:

> corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity or specifically restricted to 1 or some of the above enumerated synonyms and, *when used to designate the owner of property which may be the subject of an offense, includes this State*, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State.

N.J.S.A. 1:1-2 (emphasis added). Thus, the term "person" sometimes includes the state, but

12

only in the context of a victimized property owner and not when named as a defendant in a civil rights action.

The legislature, in enacting the NJCRA, was aware of its own statutorily-mandated definition of "person." In the original bill, subsection (c) gave a cause of action only to "[a]ny individual." Assembly Bill No. 2073 (February 9, 2004). Senate floor amendments adopted June 10, 2004, changed "individual" to "person." Assembly Bill No. 2073 (June 10, 2004) (second reprint). The change was explained as follows:

> Subsection c. of section 2 of the bill would be amended to change the word "individual" to the more inclusive term "person," which in the statutory law includes corporations and other legal entities.

Statement to Senate Floor Amendments to Assembly Bill No. 2073 at 1 (June 10, 2004) (first reprint).

Thus, the identity of the injured party that may institute an action broadened from the narrow category of "individual" to the more inclusive "person."  Throughout the entire legislative process, however, the entity being sued remained a "person," which, although more inclusive than an "individual," is not so inclusive as to include the sovereign State of New Jersey. The State, which falls outside the statutory definition of a "person," is thus excluded from the ambit of defendants against whom actions may be brought under the NJCRA.

Thus, the statute's use of the noun "person" provides two reasons - congruency with Section 1983 and New Jersey's definition of the term "person" - for construing the NJCRA to retain the State's sovereign immunity. The third reason is based upon common law tradition and common sense.

Interpreting the NJCRA to permit an action against the State and thereby allowing the imposition of an NJCRA penalty would lead to an absurd result. The statute imposes a penalty, obtainable under N.J.S.A. 10:6-2(c), and this "civil penalty shall be conveyed to the State Treasurer for deposit into the State General Fund." N.J.S.A. 10:6-2(e). If the NJCRA allows a cause of action against the State, it creates the absurd result of the State paying a civil penalty to itself. Even independent of considerations of sovereignty, this sort of absurdity should be avoided in statutory construction, and common sense should prevail. See Aponte-Correa v. Allstate Ins. Co., 744 A.2d 177.  Traditional common law principles, contemporary principles of statutory construction and common sense all demonstrate that the NJCRA does not pierce the State's sovereign immunity. Accordingly, all claims against the State premised upon the NJCRA are dismissed.

C.      MCPO and Prosecutor Defendants

1.      MCPO is an Arm of the State and, Therefore, Immune From Suit under the Eleventh Amendment

The State has retained its Eleventh Amendment immunity and cannot be sued by a private party.  A suit may be barred by the Eleventh Amendment even though a state is not named a party to the action as long as the state is the real party in interest. See Fitchik v. N.J. Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  A prosecutor's office, when acting in its law enforcement capacity, is an arm of the state.  See Wright v. State, 169 N.J. 422, 455 (2001).  As such, a suit against the MCPO is a suit against the State itself and is prohibited by the Eleventh Amendment.  A state's Eleventh Amendment immunity from

14

suit also extends to state offices and employees, provided that the state is the real party in interest.  MCI Telecomm. Corp. v. Bell Atl.-Pa. Serv., 271 F.3d 491, 503 (3d Cir. 2001); see also Pennhurst, 465 U.S. at 100-01.  In deciding whether the state is the real party in interest, the Third Circuit has relied on three factors in determining whether immunity under the Eleventh Amendment applies: (1) whether payment for any judgment would come from the state; (2) the status of the entity under state law; and (3) the degree of the entity's autonomy.  See Fitchik, 873 F.2d at 659.

Courts in this district have applied the "Fitchik factors" in deciding whether a New Jersey prosecutor's office is immune from suit under the Eleventh Amendment. These courts have unilaterally found that New Jersey county prosecutors' offices are entitled to Eleventh Amendment immunity from suits arising out of the exercise of prosecutorial powers.  See Davis v. Twp. of Lakewood, 2005 WL 1863665 (D.N.J. August 4, 2005); Elozua v. State of New Jersey, Slip Copy, 2008 WL 370926 (D.N.J. February 11, 2008); Russell v. Foti, 2006 WL 1540774 (D.N.J. May 31, 2006);  Kelley v. Edison Twp., Slip Copy, 2006 WL 1084217 (D.N.J. April 25, 2006).

In the current case, the MCPO is likewise immune from suit.  The first factor is whether payment for any judgment would come from the state.  While no one factor is conclusive, this is the most significant factor because the central goal of the Eleventh Amendment is the prevention of federal court judgments that must be paid out of the state's treasury.  See Fitchik, 873 F.2d at 659-60.  The New Jersey Supreme Court has ruled that the state must indemnify and/or defend prosecutorial employees for claims arising out of their law enforcement capacity in their investigation, arrest and prosecution

of a criminal defendant.  See Wright, 169 N.J. at 430.  Since the State must pay for the

liability of the MCPO and its employees, the first prong of the test is met.

      The second factor of Fitchik test is the status of the entity under state law.  This

prong includes four factors: (1) how state law treats the agency generally, (2) whether the

entity is separately incorporated, (3) whether the agency can sue or be sued in its own

right and (4) whether it is immune from state taxation.  See Fitchik, 873 F.2d at 659.  A

New Jersey prosecutor's office is an arm of the State and, therefore, cannot be sued.  As

an arm of the State, the MCPO has no independent existence from the State and MCPO

employees are State employees.  See Wright, 169 N.J. at 422.

      The final factor is the degree of autonomy the entity has apart from the state.  The

New Jersey Supreme Court held that "a county prosecutor's law enforcement function is

unsupervised by county government or any other agency of local government, but remains

at all times subject to the supervision and supersession power of the Attorney General."

Id. at 451-52.  This principle is also codified in the Act, which states "the criminal

business of the State shall be prosecuted by the Attorney General and the county

prosecutors."  Moreover, the Act states that "the county prosecutor's law enforcement

function is subject to the Attorney General's right to supersede."  § 52:17B-106. Based on

statute and case law, it is clear that the MCPO does not exist independently from the

State, but is rather an arm of the State.

      Based on the application of the Fitchik factors, MCPO is entitled to Eleventh

Amendment immunity.  This conclusion has been reached repeatedly with respect to

prosecutors' offices and their employees throughout the State of New Jersey. Therefore,

the Complaint as to the MCPO must be dismissed.

      2.    <u>Prosecutor Defendants as Employees of the State are Immune from Suit in their Official Capacities Under the Eleventh Amendment</u>

Under the Eleventh Amendment, state employees are immune from suit for actions taken in their official capacities. Rubinaccio, Devine and Rogers are employees of MCPO. Since MCPO is an arm of the State, the Prosecutor Defendants are state employees and entitled to immunity as well. The Supreme Court has held that the Eleventh Amendment bars a suit against a state official in his official capacity because it "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the [s]tate itself." <u>Will</u>, 491 U.S. at 71.

An employee of a New Jersey prosecutor's office acting in his official capacity is acting on behalf of the State and is thereby immune from suit under the Eleventh Amendment. <u>See</u> <u>Coleman v. Kaye</u>, 87 F.3d 1491, 1499 (3d Cir. 1996); <u>see</u> <u>also</u> <u>Hyatt v. County of Passaic</u>, U.S. Dist. LEXIS 24998 (D.N.J. Mar. 24, 2008); <u>Baker v. Brown</u>, No. 04-37, 2006 WL 1098481, at 6-7 (D.N.J. Mar. 31, 2006). Therefore, it is well established that employees of a prosecutor's office that are exercising their prosecutorial duties are state employees and are immune from suit in their official capacities under the Eleventh Amendment.

Prosecutor Defendants' tortious actions, if any, stem from actions taken in their official capacities. A suit against a state official in his official capacity is a suit against the state itself because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." <u>Kentucky</u>, 473 U.S. at 166; <u>see</u> <u>also</u> <u>Will</u>, 491 U.S. at

71; <u>Wright</u>, 169 N.J. at 452.  The Supreme Court held that "a judgment against a public servant 'in his official capacity' imposes liability on the entity he represents." <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985).  Prosecutor Defendants are public servants who are employed by the MCPO, an arm of the State, and work in their official capacities.  Any actions they took with regard to Plaintiffs were taken in their official capacities as MCPO prosecutor and detectives and State employees.  Any alleged liability resulting from the Prosecutor Defendants' actions in their official capacities would be transferred to their employer, MCPO.  The MCPO, as an arm of the State, is immune from suit under the Eleventh Amendment and the Prosecutor Defendants are similarly protected as employees.  Since the Prosecutor Defendants acted only in their official capacities with respect to Plaintiffs, they are protected by Eleventh Amendment immunity and the Complaint against them is dismissed.

　　　　　3.　　<u>Prosecutor Defendants are not Liable in their Individual Capacities</u>

　　　　　Despite Plaintiffs having pled that the Prosecutor Defendants are being sued in both their individual and official capacities, all of the actions which form the basis of the Complaint were taken by Prosecutor Defendants in their official capacities.  There are no facts alleged in the Complaint that suggest that the Prosecutor Defendants acted outside of their official capacity. The Complaint only makes allegations as to Prosecutor Defendants' conduct in investigating and arresting Daniel.   Assuming Rubinaccio participated in the execution of a lawfully obtained arrest warrant at Plaintiffs' home, such action was an execution of his prosecutorial duties.  Similarly, any actions taken by Devine and Rogers, such as swearing to the arrest warrant, were thereby taken in their

official capacities as an active part of the investigation they were conducting.  Therefore,

violations by Prosecutor Defendants,' if any, "arose out of the execution of their sworn

duties to enforce the law using all the tools lawfully available to them to combat crime."

Hyatt v. County of Passaic, 2008 U.S. Dist. LEXIS 24498 (D.N.J. Mar. 24, 2008).

Accordingly, all such conduct is properly considered "official."  Therefore, the Complaint

against Prosecutor Defendants is dismissed because it is a suit against them in their

official capacities as State employees.

      D.   Morris County

      Plaintiffs' Complaint does not set forth any legally viable claim against Morris

County because Plaintiffs' cause of action lays with MCPO, who in performing its law

enforcement functions is an agent of the State, not Morris County.  Neither an

amendment of the Complaint nor discovery will remedy the legal and procedural

deficiencies contained therein.  Therefore, Morris County's motion to dismiss is granted

pursuant to Fed. R. Civ. P. 12(b)(6) and Wright.  See 169 N.J. at 422.

Plaintiffs' allegations surround the negligent investigation and arrest of Daniel.  In

Wright, the Court examined the unique hybrid status of county prosecutor detectives with

respect to whether the state or the county should be held vicariously liable for their

actions.  See id.  The plaintiff in Wright brought claims against the county, state and

county prosecutors, including false arrest and false imprisonment.  The Court in Wright

dismissed the Complaint and distinguished between the acts that could be imputed to the

county versus the state.  The Court found that:

it is well established that when county prosecutors execute their sworn duties to

19

enforce the law by making use of all tools lawfully available to them to combat crime, they act as agents of the State.  On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.

Wright, 169 N.J. at 441 (citing Coleman v. Kaye, 87 F.3d 1491, 1500 (3d Cir. 1996)).

The New Jersey Supreme Court further stated that "both our Court and the Third Circuit Court of Appeals have recognized that county prosecutors and their subordinates act as 'agents' or 'officers' of the State when investigating criminal activity and enforcing the law." Wright, 169 N.J. at 450-51 (citing Cashen v. Spann, 66 N.J. 541, 552 (1975)). Likewise, it is "appropriate to regard [prosecutors and detectives] . . . as State agents where the alleged tortious conduct arose out of the investigation of criminal activity." Cashen, 66 N.J. at 552.  Therefore, when prosecutors engage in classic law enforcement functions, they act as officers of the State rather then the county.  See Coleman, 87 F.3d at 1499.

Plaintiffs' allegations involve Prosecutor Defendants' activities during the course of a criminal investigation.  As such, the Prosecutor Defendants were acting as agents of the State, not Morris County.  Therefore, Morris County cannot be held vicariously liable for the Prosecutor Defendants' actions during the investigation and enforcement of the criminal laws of the State.  Accordingly, the Complaint against Morris County is dismissed.

E.     Alternate Grounds for Dismissal

Defendants also raise additional arguments for dismissal of Plaintiffs' Complaint.

20

Specifically, the State argues that it is not a "person" subject to liability under 42 U.S.C. §

1983, that 42 U.S.C. § 1983 precludes recovery on a theory of *respondeat superior* and

that the Plaintiffs failed to file notice of a claim in accordance with state law.  The MCPO

and Prosecutor Defendants likewise argue that they are not "persons" subject to liability

under 42 U.S.C. § 1983 and the NJCRA.  Additionally, Rubinaccio argues that he is

absolutely immune from liability under 42 U.S.C. § 1983, that he is immune under the

Tort Claims Act and that 42 U.S.C. § 1983 precludes liability based on a theory of

*respondeat superior*.  The Court finds many of these arguments persuasive, and in

particular notes that 42 U.S.C. § 1983 does indeed preclude liability based on a theory of

*respondeat superior*.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658,

691 (1978); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000).  Because

the Court finds the Eleventh Amendment grounds to be dispositive, however, it need not

address these arguments here.

**IV.** C O N C L U S I O N

For the reasons stated, it is the finding of this Court that Defendants' motions to

dismiss are **granted**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:        September   4  , 2008
Orig.:       Clerk
cc:          All Counsel of Record
             Hon. Mark Falk, U.S.M.J.
             File